**In re Gary and Roxanne BEACH, Debtors.**

**Civ. A. No. 94–1004–MLB.**

United States District Court, D. Kansas.

June 22, 1994.

Victor S. Nelson, Morrison & Hecker, Wichita, KS, for Gary and Roxanne Beach.

Connie R. DeArmond, Office of U.S. Atty., Wichita, KS, for Small Business Admin.

Eric D. Bruce, Bruce & Davis, Wichita, KS, for State Bank of Satanta.

Stephen B. Angermayer, Attys. Palmer, Fern & Angermayer, Pittsburg, KS, for Fortune Mortgage.

Teresa J. James, Adams, Jones, Robinson & Malone, Wichita, KS, for Bank IV Garden City Kansas.

Connie J. Nordboe–Tinker, Robbins, Tinker, Smith & Tinker, Wichita, KS, for General Motors Acceptance Corp.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on the debtors' appeal from the decision of the bankruptcy court denying confirmation of their Second Amended Chapter 12 Plan of Reorganization and denying their Motion to Approve Post-petition Financing. (Doc. 1)

The material facts are not in dispute. Debtor Gary Beach owns a 25% undivided interest in 6880 acres of ranch land (Bar–O–Bar Ranch) located in Finney County, Kansas. Gary Beach's mother and sister are the other cotenants of the Bar–O–Bar Ranch. The three operate a farming partnership on the ranch land. The entire tract of ranch land is valued at $1.6 million.

Gary Beach, his mother and sister are the comakers of two notes held by the Small Business Administration (SBA) and secured by two mortgages on the Bar–O–Bar Ranch. Although the parties dispute the precise amount owed on the notes, they agree the amount owed is at least $409,512.15 and not in excess of $510,562.40.[1]

The debtors filed this Chapter 12 bankruptcy proceeding due to losses suffered by Gary Beach in cattle transactions unrelated to the partnership. Under their plan of reorganization, debtors proposed to pledge 560 acres of Bar–O–Bar Ranch to secure the pre- and post-petition claims of the State Bank of Satanta (Bank). At present, the Bank has a judgment lien on the Bar–O–Bar Ranch that is subordinate to the SBA's mortgages. Under the plan, the SBA would retain its first mortgages to the extent of $45,000 on the 560 acres and would be subordinated to the Bank on the remainder of its mortgages. The SBA objected to the plan, and the bankruptcy court denied debtors' motion for postpetition financing and subordination of lien.

### Standard of Review

Bankruptcy Rule 8013 sets forth the standard of review for appeals from orders of a bankruptcy court. The bankruptcy court's conclusions of law are reviewed *de novo*. *In re Burkart Farm and Livestock*, 938 F.2d 1114, 1115 (10th Cir.1991).

### Discussion

■ The parties agree that this case turns on the proper construction of 11 U.S.C. § 506(a), which provides in relevant part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition

or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

According to the debtors, the statute envisions a valuation premised on a simulated conversion of the collateral into cash in the most commercially reasonable manner practicable under the circumstances. Stated another way, debtors' argument is that the value of the SBA's secured claim is measured by the entire value of Bar–O–Bar Ranch, not just the 25% undivided interest owned by the debtor. Under debtors' argument, the SBA is greatly oversecured and is not threatened by subordination of its mortgages.

The SBA, on the other hand, contends that the plain language of the statute indicates that it is secured only to the extent of $400,000, which represents its interest in the debtors' interest (25% of $1.6 million) in the Bar–O–Bar Ranch. The SBA argues that the court is not authorized to include the property of nondebtors in determining whether the SBA is oversecured.

Debtors argue the SBA should be considered oversecured because it would be outside of bankruptcy. Debtors place emphasis on the Supreme Court's statement in *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979), that state law governs the nature and extent of property interests recognized under the Bankruptcy Code. From this statement, they contend that § 506(a) requires valuing the estate's interest in Bar–O–Bar Ranch at $1.6 million to make the positions of the various creditors consistent with what they would be outside bankruptcy. Debtors insist that the bankruptcy court's decision gives the cotenants a windfall and also prejudices the Bank's claim. Such a result, they contend, is contrary to the Supreme Court's admonition in *Butner* that a party should not receive a windfall merely by the happenstance of bankruptcy. *Id.*

■ The court does not agree with debtors' argument. Their argument fails to ex-

---

1. This figure does not include the interest accruing on the claim since the SBA filed its amended proof of claim.

plain how the bankruptcy estate can have an interest in the 75% undivided portion of the Bar–O–Bar Ranch the debtors do not own. The Bankruptcy Code does not contemplate the inclusion of the interests of nondebtors into the bankruptcy estate. Rather, the bankruptcy estate is limited to property in which the debtor has a legal or equitable interest. 11 U.S.C. § 541(a). The court can find nothing in the language of § 506(a) to suggest that Congress intended the valuation approach suggested by the debtors.

Debtors argue this case is indistinguishable from *In re Hale,* 141 B.R. 225 (Bankr. N.D.Fla.1992). In *Hale,* an unsecured creditor in a Chapter 11 bankruptcy proceeding sought to force secured creditors, under the doctrine of marshaling, to look first to all of their security for full satisfaction of their respective claims before they received distribution as unsecured creditors. The SBA was the holder of a promissory note in the amount of $127,105.05 executed by the debtor and D.M. Hale, secured by a mortgage on real property in Alachua County valued at $178,000. The mortgaged property was titled in the names of the debtor and D.M. Hale as tenants in common. The Farmers Home Administration (FmHA) was the holder of a promissory note in the amount of $167,435,10 executed by the debtor, Earl Ference and D.M. Hale, secured by a mortgage on real property in Union County valued at $252,000. The mortgaged property was titled in the names of the debtor, Earl Ference and D.M. Hale as tenants in common.

FmHA and SBA argued that since their secured claims against the estate were less than the total of their claims, they were entitled to share as unsecured creditors. They sought to bifurcate their claims under § 506(a) to allow them to seek a deficiency from the estate. The proposed plan required FmHA and SBA to foreclose on the entire property, not just the estate's undivided interests, before establishing any deficiency claim.

As previously stated, the unsecured creditor, a Bank, sought to invoke the equitable doctrine of marshaling. This doctrine applies when a senior lienor has a lien that covers two funds of the debtor while the junior lienor has recourse to only one of those funds. *Id.* at 226. Under the doctrine, the senior lienor is required to exhaust the fund available to it exclusively before proceeding against the fund that is also available to the junior lienor.

■ Three elements must be found in order for a court to invoke the marshaling doctrine: (1) existence of two creditors with a common debtor; (2) the existence of two funds belonging to the debtor; and (3) the legal right of one creditor to satisfy his demand from either of the funds, while the other may resort to only one fund. *In re Muir,* 89 B.R. 157, 160 (Bkrtcy.D.Kan.1988) (Citation omitted).

The SBA and FmHA argued in *Hale* that the second element was absent. The court rejected their argument, reasoning as follows:

[T]he property to be marshaled must be owned by the debtor for the doctrine to be properly invoked. In other words, the owner of the asset in question must be primarily liable for the debt giving rise to the claim. FmHA and SBA correctly assert that if the owner of the property was a guarantor or surety of the underlying corporate debt, marshaling would not be ordered absent (1) circumstances that would warrant piercing of the corporate veil or (2) treatment of the guarantee as contribution to the debtor's capitol. (sic) (Citation omitted). However, in this case D.M. Hale and Ference are comakers of the debts, not guarantors or sureties. Accordingly, we find that the common property requirement is satisfied because the co-tenants are as obligated to the senior lienholders as the estate is.

*Hale,* 141 B.R. at 227.

The court found that if the SBA and FmHA were allowed to bifurcate their claims under § 506(a) based on the value of the estate's undivided interest in the collateral, an inequitable squeezing-out of the general creditors would result. Accordingly, the court found the marshaling of the assets, namely, the respective mortgages, was appropriate. *Id.* at 228.

This court agrees that *Hale* supports the debtors' position. However, the court is persuaded that the *Hale* court's reasoning is flawed. First, the *Hale* court ignored the plain language of § 506(a) and used the property of nondebtors to value the SBA's and FmHA's secured claims, rather than limiting the value to the estate's undivided interest in the respective properties. Second, the *Hale* court misapprehended the marshaling doctrine, specifically the common property requirement.

As previously noted, the common debtor must have an interest in two funds for the marshaling doctrine to be invoked. While the debtor in *Hale* did have an interest in two tracts of real property, the common property requirement focuses on whether the debtor has an interest in the property sought to be marshalled.[2] Thus, the inquiry in *Hale* was whether the debtor had an interest in the undivided part of the Alachua County real property the Bank was seeking to have the SBA marshal, and whether the debtor had an interest in the undivided part of the Union County real property the Bank was seeking to have the FmHA marshal. Of course, the debtor had no interest in the undivided part of the real property sought to be marshaled. These undivided interests were owned by D.M. Hale and Earl Ference.

After recognizing that the property to be marshaled must be owned by the debtor, the *Hale* court stated: "In other words, the owner of the asset in question must be primarily liable for the debt giving rise to the claim … Accordingly, we find that the common property requirement is satisfied because the co-tenants are as obligated to the senior lien-holders as the estate is." *Id.* at 227.

This analysis is a non sequitur. Whether co-tenants are obligated to the secured creditor is of no consequence to the application of the marshaling doctrine. Rather, the court looks to whether the debtor has an interest in two funds. The *Hale* court failed to recognize that the debtor had no interest in the real property sought to be marshalled.

In the case at bar, the bankruptcy court properly analyzed the marshaling doctrine. It found that marshaling of assets is not proper because the debtors did not satisfy the common property requirement. The bankruptcy estate had no interest in the 75% of the Bar–O–Bar Ranch not owned by the debtors. This court agrees with the bankruptcy court's finding.

Debtors direct the court's attention to two other cases which they contend supports their interpretation. In *In re Reed,* 940 F.2d 1317 (9th Cir.1991), the debtor appealed the bankruptcy court's injunction ordering him to turn over his portion of the net proceeds from the sale of his residence, which he held in joint tenancy with his wife. Under California law, a creditor cannot force the sale of a homestead unless the proceeds from the sale would exceed the sum of the homestead exemption and the full value of any jointly given mortgage encumbrance on the property. The debtor argued that he had no interest in the residence because the value of his one-half interest less the full value of encumbrances and the homestead exemption would be a negative number. The court disagreed on the basis that debtor's argument related to whether a forced sale by a creditor could take place, whereas the case before it was concerned with determining whether there was any value in debtor's residence. The court summarized:

> We hold that there is value if the Debtor's one-half interest in the net proceeds from sale of the entire residence exceeds the value of Debtor's homestead exemption. In this case it did. Therefore, the district court was correct in stating that the bankruptcy estate had an interest in one-half of the net proceeds of the sale less Debtor's homestead exemption.

*Id.* at 1322.

*Reed* does not support the debtors' position in this case. The court noted the value of debtor's interest was based on his one-half interest in the residence. The court did not attribute the joint tenant's interest to the debtor. Yet that is precisely what the debtors seek to do in this case; attribute the value of Gary Beach's mother's and sister's

---

2. The SBA did not seek to marshal the debtor's undivided interest in the Union County real property, and the FmHA did not seek to marshal the debtor's undivided interest in the Alachua County real property.

interest in Bar–O–Bar Ranch to his bankruptcy estate. *Reed* implicitly rejects that position.

Debtors also rely on *In re Panas,* 68 B.R. 421 (Bankr.E.D.Pa.1986), in which the court addressed the value of a creditor's interest under § 506(a) in property owned by the debtor and his nondebtor spouse as tenants by the entireties. The creditor had a claim of $9.9 million against the debtor, secured by property worth $10 million. The debtor argued that the estate's interest under § 506(a) was only $5 million, and the creditor's lien securing its $9.9 million claim should be avoided to the extent that it exceeded that amount.

The court rejected the debtor's argument and held the debtor's interest in the entireties property was $10 million. *Id.* at 425–26. A contrary ruling would, in the court's view, permit a debtor to manipulate the Bankruptcy Code to achieve an inequitable result. The court noted that under Pennsylvania law, the creditor would be entitled to levy on the whole entireties property to satisfy its claim. *Id.* at 425.

*Panas* provides no support for the debtors' argument in this case. The debtors own a 25% undivided interest in the Bar–O–Bar Ranch. In other words, Gary Beach, his mother and sister hold the property as tenants in common. In contrast, the debtor in *Panas* had an interest in the entire property, and therefore his interest was properly included in the bankruptcy estate.

The court agrees with the bankruptcy court that under § 506(a) the SBA has a secured claim of $400,000 and an unsecured claim in excess of that amount.

■ Debtors argue their plan complies with 11 U.S.C. § 1225(a)(5) and should be confirmed. This section provides a debtor with three alternatives in dealing with secured claims. The pertinent alternative in this case provides that the debtors must ensure that the holder of the secured claim retains the lien securing the claim and the plan pays the present value of such claim.

Debtors' argument is premised on the notion that SBA is oversecured. This premise is invalid. As the SBA correctly notes, the debtors' plan proposes to reduce the value of the SBA's secured claim from $400,000 to approximately $170,000. Debtors' plan cannot be viewed as retaining the SBA's lien in these circumstances.

■ Debtors next argue that the court should approve their request for post-petition financing and grant a super priority lien under 11 U.S.C. § 364(d). Such a request may be granted, however, only if the creditor holding the current lien on the property of the estate on which the senior or equal lien is to be granted is adequately protected. Once again, the debtors' request is based on the premise that the SBA is oversecured and therefore has adequate protection even though its lien will be subordinated. That premise being invalid, the court affirms the bankruptcy court's ruling in this regard.

Finally, the debtors ask this court to invoke the doctrine of marshaling. The court reviewed this doctrine in the context of its discussion of *In re Hale, supra.* As the court therein noted, the debtors cannot show they own an interest in two funds. Marshaling therefore cannot be applied in this case.

The debtors' appeal (Doc. 1) of the bankruptcy court's order is denied. The decision of the bankruptcy court is affirmed.

IT IS SO ORDERED.