In re Lynette **VENEZIALE**, Debtor.

Lynette Veneziale, Plaintiff,

v.

**Midfirst Bank and Edward Sparkman, Standing Chapter 13 Trustee, Defendants.**

Bankruptcy No. 00–10213KJC. Adversary No. 00–598.

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 25, 2001.

Marian C. Nowell, Philadelphia Legal Assistance, Philadelphia, PA, for debtor.

Leslie E. Puida, Goldbeck, McCafferty & McKeever, Philadelphia, PA, for defendants.

## MEMORANDUM OPINION

KEVIN J. CAREY, Bankruptcy Judge.

### BACKGROUND [1]

Before this Court is the debtor's "Complaint To Determine Validity And Extent Of Lien And To Object To Proof Of Claim of Midfirst Bank" (the "Complaint") that was filed with this court on August 25, 2000. Midfirst Bank (the "Bank") filed its answer to the Complaint on September 26, 2000 and, upon Court approval after a hearing on notice, the Bank filed an amended answer on June 22, 2001.[2] A hearing was held on April 19, 2001, at which the parties asked to submit this matter upon stipulated facts and submission of briefs. The debtor filed her brief on June 13, 2001; the Bank filed its brief on June 18, 2001. On June 21, 2001, the parties filed a "Joint Trial Statement" which attached six exhibits [3] and contained various sections, including (1) Statement of Uncontested Facts; (2) Statement of Legal Dispute; and (3) Statement of Additional Facts Pertinent To Dispute.

The undisputed facts follow: In 1986, the debtor was living with David Corliss and used his last name.[4] On or about September 26, 1986, the debtor and Mr. Corliss entered into a consumer loan transaction with Travelers Mortgage Services ("Travelers") to purchase residential real property located at 2113 Carver Street, Philadelphia, PA 19124 (the "Property"). The deed to the Property identifies the grantees of the Property as "David L. Corliss and Lynette M., his wife." The debtor and David Corliss signed a promissory note in favor of Travelers in the original principal amount of $35,811.00 under the names "David L. Corliss and Lynette M. Corliss." The note had a thirty year term and required monthly payments in the amount of $314.27 each. To secure the promissory note, David Corliss and the debtor granted Travelers a mortgage on the Property. The mortgage also granted

---

1. This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Fed. R. Bankr.P. 7052.

2. After a hearing on June 21, 2001, this Court entered an order granting the Bank's request to amend its answer. On June 22, 2001, the Bank amended its answer to withdraw its admission that the debtor owned the Property as a tenant in common.

3. The exhibits attached to the Joint Trial Statement were as follows: (1) the debtor's chapter 13 plan; (2) the Bank's Proof of Claim (with mortgage and note attachments); (3) the Complaint; (4) the Bank's answer to the Complaint; (5) the debtor's schedules and statement of financial affairs; and (6) the deed to 2113 Carver Street, Philadelphia, PA dated September 26, 1986.

4. The stipulated facts in the Joint Trial Statement provide that "Plaintiff Lynette Veneziale did, in 1986 and for some time thereafter use her co-habitating boyfriend, David Corliss' name," but do not give any further detail as to the extent to which the debtor used or was known by the name "Corliss."

Travelers a security interest in appliances, machinery, furniture, and other personalty.[5] Travelers assigned the note and mortgage to Citicorp Mortgage, Inc., which, in turn, assigned the note and mortgage to the Bank. The Assignment from Citicorp Mortgage, Inc. to the Bank was recorded on June 5, 1999 in the Philadelphia County Department of Records.

The debtor (and for some of the time, David Corliss) paid the regular monthly payments on the note and mortgage until about May 1999. On or about October 29, 1999, the Bank instituted a mortgage foreclosure action against "David M. Corliss and Lynette M. Corliss," in the Philadelphia Court of Common Pleas. The complaint alleged that the principal balance of the mortgage that was due and owing was $31,138.47. The Bank obtained a default judgment on December 15, 1999[6] in the amount of $36,738.99.

On January 4, 2000, the debtor filed a chapter 13 bankruptcy petition. She filed her schedules on February 16, 2000. The debtor listed the Property on "Schedule A—Real Property" and described her interest in the Property as "Tenant in Common ½ interest" with a value of $17,000.00. On March 2, 2000, the Bank filed a proof of claim asserting a secured claim in the amount of $36,738.99 against the debtor.

The debtor's chapter 13 plan provides for payment to the Bank in an amount equal to her one-half interest in the Property. The parties agree that the fair market value of the Property is $34,000.00 and that the City of Philadelphia has priority liens in the amount of $1,718.58 for unpaid taxes and water and sewer charges. The parties also agree that the Bank's claim must be reduced by a $2,000.00 recoupment pursuant to the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA").

In addition to the undisputed facts, the Joint Trial Statement filed by the parties contained a proffer of evidence regarding the debtor's testimony.[7] The debtor would testify that she and David Corliss were never legally married. They had no civil, religious or other service or ceremony in which they declared that they were husband and wife to each other or in which they made such a declaration publicly. They never made promises to each other expressing a present intention to be married.

The debtor would also testify that she and David Corliss lived together and had two children together. The children are currently in their teenage years and the debtor is their sole caretaker. David Corliss left the debtor and children a number of years ago. The debtor believes he lives somewhere in the Pocono Mountains of Pennsylvania, but she does not know his exact whereabouts.

The debtor would also testify that her plan for paying the mortgage is to pay the secured claim on her one-half interest through her chapter 13 plan. Thereafter, she plans to locate David Corliss and have him sign over his half interest in the Property to the children or to her. The last time she spoke to David Corliss (he contacted her; she does not know his address or telephone number), Corliss stated that

---

5. The parties agree that the grant of this security interest removes the mortgage from the anti-modification provisions of 11 U.S .C. § 1322(b)(2). *In re Hammond,* 27 F.3d 52 (3d Cir.1994).

6. Although the undisputed facts in the Joint Trial Statement state that the Bank's judgment was obtained on July 15, 1999, that date must be incorrect. The Bank's proof of claim and the Complaint both indicate that the date of the judgment was December 15, 1999.

7. I am uncertain how the parties, who chose to offer no live testimony, expect me to treat this proffer. The Bank submitted nothing in opposition to the debtor's proffer.

he did not care to be responsible for his prior family and would be willing to sign over his half interest in the Property. If that occurs, the debtor (or her children) intend(s) to file another bankruptcy case to make an arrangement to pay the remaining half interest.

For the reasons set forth below, I conclude that, pursuant to Pennsylvania law, the debtor and David Corliss hold title to the Property as tenants in common. Therefore, the debtor owns a one-half interest in the Property and the Bank's secured claim is equal to one-half the value of the Property, less the amount of prior city liens and a TILA recoupment claim, which the parties agree should be deducted from the amount of the Bank's secured claim.

## DISCUSSION

A. *The debtor holds title to the Property as a tenant in common.*

The Bank argues that the debtor and David Corliss hold title to the Property as tenants by the entireties because the Property was deeded to "David L. Corliss and Lynette M., his wife." Even if the couple never had a formal marriage ceremony, the debtor was holding herself out as the wife of David Corliss at the time of the loan transaction and thereafter. There-

fore, the Bank argues, the debtor and David Corliss had a common law marriage.

■■■■ It is well established in Pennsylvania law that two persons who are not married to one another cannot hold title to land as tenants by the entireties, because marriage is an essential undisputed facts and proffered testimony [8] of the debtor in this case do not establish either a ceremonial or a common law marriage between the debtor and David Corliss.[9]

■■■■ The Bank does not dispute that the debtor and David Corliss never had a marriage ceremony. The issue is whether the actions of the debtor and David Corliss established a common law marriage. The general rule in Pennsylvania is that "a common law marriage can only be created by an exchange of words in the present tense, spoken with the specific purpose that the legal relationship of husband and wife is created by that." *Staudenmayer,* 714 A.2d at 1020. Pennsylvania courts generally disfavor common law marriages,[10] but a rebuttable presumption of marriage may be found where two elements can be shown: (1) constant cohabitation; and (2) a reputation of marriage "which is not partial or divided but is broad and general." *Id.,* 714 A.2d at 1020–21.

8. Even if I were to give little or no weight to the proffered testimony, the burden of proving the common law marriage falls upon the party alleging a marriage; in this case, the Bank. *Staudenmayer v. Staudenmayer,* 552 Pa. 253, 262, 714 A.2d 1016, 1020 (Pa.1998) (citations omitted). The *Staudenmayer* court described this burden of proof as a "heavy burden where there is an allegation of a common law marriage.... When an attempt is made to establish a marriage without the usual formalities, the claim must be reviewed with 'great scrutiny.'" *Id.* (citations omitted.)

9. In Pennsylvania, marriage is defined as "a civil contract by which a man and a woman take each other for husband and wife...There

are two kinds of marriage: (1) ceremonial; and (2) common law.... A ceremonial marriage is a wedding or marriage performed by a religious or civil authority with the usual or customary ceremony or formalities." *Staudenmayer,* 714 A.2d at 1019 (citations omitted).

10. "Because claims for the existence of a marriage in the absence of a certified ceremonial marriage present a 'fruitful source of perjury and fraud,' Pennsylvania courts have long viewed such claims with hostility....Common law marriages are tolerated, but not encouraged." *Staudenmayer,* 714 A.2d at 1019.

■ Apparently relying upon the rebuttable presumption, the Bank argued that the debtor and Mr. Corliss had a common law marriage because, at the time of the loan transaction, the debtor was "generally holding herself out as the wife of David Corliss."[11] However, Pennsylvania courts have recognized the use of a rebuttable presumption only when the parties are not available to testify about the occurrence of an exchange of *verba in praesenti. Staudenmayer,* 714 A.2d at 1021. There is no evidence that the debtor was not available to testify in this case, and her proffered testimony indicates that the debtor and Mr. Corliss never exchanged words in the present tense to create a common law marriage. When parties are available to testify and the rebuttable presumption does not arise, then "the burden rests on the party claiming a common law marriage to produce clear and convincing evidence" of the exchange of *verba in praesenti. Id.* The Bank has not met its burden in this case and, therefore, I can not conclude that the parties had a common law marriage. Since there was no marriage, the debtor and Mr. Corliss cannot hold title to the Property as tenants by the entireties, regardless of the language in the deed.

Although the deed in this case did not convey an entireties interest in the Property to the debtor and David Corliss, it is nonetheless a valid deed which conveyed title as tenants in common. *See Estate of Bruce,* 372 Pa.Super. 16, 538 A.2d 923 (Pa.Super.Ct.1988).[12] As tenants in common, the debtor and David Corliss each held an undivided interest in the Property in equal shares. *In re Estate of Engel,* 413 Pa. 475, 477–78, 198 A.2d 505, 507 (Pa. 1964).

B. *The amount of the Bank's secured claim under Section 506(a) .*

■ The Complaint seeks a determination of the amount of the Bank's allowed secured claim pursuant to 11 U.S.C. § 506(a).[13] Section 506(a) provides:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The parties agree that the value of the Property is $34,000.00. To determine the

11. Brief in support of Midfirst Bank, filed June 15, 2001, at p. 3.

12. The language in the deed in this matter is identical to the language in the deed in *Estate of Bruce,* in which the court held that the granting language was not sufficient to express an intent to create a right of survivorship and, therefore, found the title to be held as tenants in common instead of joint tenants. *Estate of Bruce,* 538 A.2d at 927.

13. The Complaint is entitled "Complaint To Determine Validity And Extent Of Lien And To Object To Proof Of Claim Of Midfirst Bank," which may indicate that the debtor is seeking relief under Subsections 506(a) [relating to determination of the allowed amount of the secured claim] *and* 506(d) [relating to avoidance of a lien to the extent it secures an amount that is in excess of the allowed secure claim]. However, the relief requested by the debtor in the Complaint and argued by the debtor in her filings appears to be limited to a determination of the allowed amount of the secured claim under Section 506(a). Accordingly, this Memorandum Opinion is limited to a determination of the amount of the Bank's secured claim.

"value of such creditor's interest in the estate's interest in such property," Section 506(a) requires the court to consider "the purpose of the valuation." In this case, the debtor is seeking a Section 506(a) valuation of the Bank's secured claim for the purpose of ensuring that its treatment of the Bank's claim in its chapter 13 plan will comply the confirmation requirements of 11 U.S.C. § 1325(a)(5)[14]. The debtor will be required to pay to the Bank in her chapter 13 plan the amount of the Bank's "allowed secured claim."

The debtor argues that the Bank's allowed secured claim should be limited to the value of her one-half interest in the Property.[15] The Bank says that its allowed secured claim is equal to the value of the entire Property. Under Section 506(a), the Bank's secured claim is limited to "the value of such creditor's interest in the *estate's interest* in such property." 11 U.S.C. § 506(a)(emphasis added). The estate's interest in the Property is defined by Section 541(a), which provides that the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, the extent of the debtor's "legal or equitable" interest in property is determined by applying state law. *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)(Congress has generally left the determination of property rights in the as-sets of a bankrupt's estate to state law); *In re O'Dowd*, 233 F.3d 197, 202 (3d Cir. 2000)(While federal law defines what types of property comprise the estate, state law generally determines what interest, if any, a debtor has in property.)

The debtor owns the Property as a tenant in common with David Corliss and her interest in the Property is equal to one-half of the value of the property. *See* Part A, *supra*. Therefore, the estate's interest in the property is also limited to one-half of the value of the Property, or $17,000.00. *See, In re Abruzzo*, 249 B.R. 78, 88 (Bankr. E.D.Pa.2000); *In re Crompton*, 68 B.R. 831, 835 (Bankr.E.D.Pa.1987). *Cf. In re Beach*, 169 B.R. 201, 204 (D.Kan.1994).

However, the analysis does not stop there. Pursuant to Section 506(a), the allowed secured claim is limited to the "value of such *creditor's interest* in the estate's interest in such property." The "creditor's interest" in the property takes into account prior liens. *Abruzzo*, 249 B.R. at 87. In the Joint Trial Statement, the parties agree that the Bank's claim should be reduced by the amount of the City of Philadelphia's prior liens ($1,718.58) and a TILA recoupment claim ($2,000).[16] The examples for calculating the Bank's secured claim given by the parties in the Joint Trial Statement deduct the amount of the prior liens and TILA recoupment claim from the value of the debtor's inter-

**14.** 11 U.S.C. § 1325(a)(5) provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—. . .
(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim

is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder.

**15.** The debtor's plan places the Bank's secured claim in Class 3 and contemplates that the "allowed secured claim" of the Bank as of the effective date of the debtor's plan is "less than $17,000.00." *See* Exhibit 1, Chapter 13 Plan of the Debtor, at p. 2.

**16.** Joint Trial Statement, paragraphs 17 and 18, at p. 4.

est in the Property (i.e., $17,000.00) rather than from the value of the entire Property (i.e., $34,000.00).[17] Because the parties' calculation method for the city liens is consistent with the analysis of this issue performed by my colleague, Judge Diane Weiss Sigmund, in the *Abruzzo* case, (*Abruzzo,* 249 B.R. at 89–90), I will deduct the prior city liens from the debtor's one-half interest in the Property. There is a split in bankruptcy decisions arising out of this district about whether a TILA recoupment claim should be deducted from the secured or unsecured portion of a bifurcated claim.[18] I need not, however, choose in this matter between competing methods, because the parties have made an agreement to deduct the recoupment claim from the secured portion of the Bank's claim. Accordingly, the Bank's allowed secured claim is $13,281.42 and the remainder of the Bank's claim against the debtor is unsecured.[19]

### C. *Truth in Lending Act attorney fees and costs.*

In the Complaint, the debtor requests that this Court award reasonable attorney fees and costs to her counsel, Community Legal Services, arising from the debtor's TILA claim against the Bank. While the parties have agreed to deduct the TILA recoupment claim from the Bank's claim, the Joint Trial Statement and briefs are silent with respect to the award of attorney fees in connection with the TILA claim. As the prevailing party on the TILA claim, the debtor is entitled to receive a reasonable attorney fee pursuant to 15 U.S.C. § 1640(a)(3). *Johnson v. 2nd National Fund Corp.,* 515 F.Supp. 1380, 1381 (E.D.Pa.1981). The right to an award for attorney fees does not change because the debtor was represented by a legal services office. *Id.* However, the attorney fee award must be limited to services rendered in connection with the TILA claim, which the parties ultimately resolved on their own. I will enter an order directing the debtor's attorney to file an affidavit setting forth a description of the services rendered in connection with the TILA claim and the total amount requested, in a form consistent with applicable law and rules. The Bank will be given an opportunity to review the requested attorney fees and, if it has any objection, I will schedule a hearing to further consider the attorney fee award.

### D. *Conclusion.*

For the reasons set forth above, I conclude that the debtor owns the Property as a tenant in common with David Corliss. I also conclude that the allowed secured claim of the Bank is $13,281.42, and the remainder of the Bank's claim is unsecured. An appropriate order follows.

### ORDER

**AND NOW,** this 25th day of September, 2001, upon consideration of the debtor's

---

**17.** The parties agreement to deduct the city liens and TILA recoupment claim from the debtor's one half interest in the Property was conditioned upon this court concluding that the debtor held title to the Property as a tenant in common.

**18.** *See In re Jablonski,* 70 B.R. 381, 390 (Bankr.E.D.Pa.1987)(Scholl, J.), *aff'd in part and remanded in part on other grounds,* 88 B.R. 652 (E.D.Pa.1988)(A TILA recoupment claim should be applied to reduce the secured portion of the mortgagee's claim); *but see In re Bender,* 86 B.R. 809, 816 (Bankr.E.D.Pa. 1988)(Fox, J.)(A TILA recoupment claim should be bifurcated in the same proportion as the creditor's secured and unsecured claims).

**19.** The $2,000 TILA recoupment claim is deducted from the Bank's secured claim, but should not be included in the remaining unsecured claim of the Bank. Therefore, the Bank's remaining unsecured claim is in the amount of $21,457.57.

"Complaint To Determine Validity And Extent Of Lien And To Object To Proof Of Claim Of Midfirst Bank" (the "Complaint"), the parties' Joint Trial Statement and briefs submitted in connection with the Complaint, and for the reasons given in the accompanying Memorandum Opinion, it is hereby **ORDERED** that:

1. Midfirst Bank's claim against the debtor shall be set as follows:

   (a) Midfirst Bank has an allowed secured claim against the debtor in the amount of $13,281.42; and

   (b) the remainder of Midfirst Bank's claim against the debtor, in the amount of $21,457.57, is unsecured.

2. Midfirst Bank shall pay the debtor's attorney fees in connection with the debtor's Truth in Lending Act claim against the Bank in accordance with 15 U.S.C. § 1640(a)(3). On or before ten (10) days after the date of this Order, the debtor's counsel (Community Legal Services) shall file with the Court and serve upon Midfirst Bank and it counsel, an affidavit setting forth a description of legal services rendered in connection with the debtor's Truth in Lending Act claim, which affidavit shall be in compliance with applicable law and rules. Within ten (10) days after the date the affidavit is filed, Midfirst Bank shall file with the Court any objection to the amount of the attorney fees. If the Bank files an objection, the Court will schedule a hearing to consider the Bank's objection to the payment of the debtor's counsel's attorney fees.